UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| EUGENIO PENA,<br><br>        Petitioner,<br><br>        vs.<br><br>MARION SPEARMAN, Warden,<br><br>        Respondent. | Case No:  C 13-3983 SBA (PR)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS; AND DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner, a state prisoner currently incarcerated at the Correctional Training Facility, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of an adverse disciplinary finding in 2009.  This matter is before the Court on Respondent's motion to dismiss.  Having read and considered papers filed in connection with this matter, and being fully informed, the Court hereby GRANTS Respondent's motion and dismisses the petition.

## I.      BACKGROUND

In 1993, Petitioner was sentenced to an indeterminate sentence of life with the possibility of parole plus eleven years.  Dkt. 1 in Case No. C 11-6692 SBA (PR) at 2.  His minimum eligible parole date was in 2005.  Dkt. 6, Exs. 1, 3.

Petitioner filed the instant federal habeas petition on August 27, 2013.  Dkt. 1.  He challenges a prison disciplinary hearing held at San Quentin State Prison in 2009, which resulted in a guilty finding for possessing a controlled substance for distribution.  Dkt. 6, Ex. 2.  Petitioner was assessed 180 days of credit loss.  Id.  The petition alleges several procedural due process violations with respect to his 2009 disciplinary hearing.  Id.

Respondent now moves to dismiss the petition on the grounds that it:  (1) fails to invoke federal habeas corpus jurisdiction; (2) fails to implicate a federally protected liberty interest; (3) is unexhausted; and (4) is untimely.  Dkt. 6.  Petitioner has filed an opposition to the motion, Respondent has filed a reply, and Petitioner has filed a sur-reply.  Dkts. 9, 11, 12.

## II.   DISCUSSION

### A.   FAILURE TO INVOKE FEDERAL HABEAS CORPUS JURISDICTION

Respondent contends that habeas jurisdiction is lacking because a successful challenge will not result in Petitioner's release or otherwise shorten his confinement. Petitioner responds that habeas jurisdiction is proper because the 2009 disciplinary finding could lengthen his confinement.  Specifically, Petitioner argues that the Board of Parole Hearings generally grants postconviction credits[1] once he is deemed suitable for parole, but that the disciplinary finding could prevent him from earning such credits.  He cites Title 15 of the California Code of Regulations, which states, in relevant part:  "No annual postconviction credit shall be granted in the case of any prisoner who commits serious . . . or numerous infractions of departmental regulations, violates any state law, or engages in other conduct which could result in rescission of a parole date . . . ."  Dkt. 9 at 3 (quoting Cal. Code Regs. tit. 15, § 2410(d)).

"'Federal law opens two main avenues to relief on complaints related to imprisonment:  a petition for habeas corpus pursuant to 28 U.S.C. § 2254, and a complaint under 42 U.S.C. § 1983.  Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.'"  Hill v. McDonough, 547 U.S. 573, 579 (2006) (quoting Muhammad v. Close, 540 U.S. 749, 750 (2004)).  "An inmate's challenge to the circumstances of his confinement, however, may be brought under

---

[1] "The suggested amount of postconviction credit is zero to 4 months for each year served since the date the life term started[,] excluding any time during which service of the life term is tolled."  Cal. Code Regs. tit. 15, § 2410(b).

1  [section] 1983."  Id.

2      The Supreme Court has consistently held that any claim by a prisoner attacking the

3  fact or duration of his confinement must be brought under the habeas sections of Title 28 of

4  the United States Code.  See Calderon v. Ashmus, 523 U.S. 740, 747 (1998); Edwards v.

5  Balisok, 520 U.S. 641, 648 (1997); Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

6  Likewise, a claim that would necessarily imply the invalidity of a prisoner's conviction or

7  continuing confinement must be brought in a habeas petition.  See id.  The Supreme Court,

8  however, has declined to address whether a challenge to a condition of confinement may be

9  brought under habeas.  See Bell v. Wolfish, 441 U.S. 520, 526 n.6 (1979); Fierro v. Gomez,

10  77 F.3d 301, 304 n.2 (9th Cir.), vacated on other grounds, 519 U.S. 918 (1996).

11  Meanwhile, the Ninth Circuit has held that "habeas jurisdiction is absent, and a [section]

12  1983 action proper, where a successful challenge to a prison condition will not necessarily

13  shorten the prisoner's sentence."  Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003).

14      Here, Respondent argues that a successful challenge to the 2009 disciplinary finding

15  would not affect the fact or length of Petitioner's incarceration.  This Court agrees.  Habeas

16  is not the proper avenue of relief for Petitioner's claim.  Petitioner is serving an

17  indeterminate life sentence, and his minimum eligible parole date passed in 2005.  In that

18  situation, a loss of time credits would not delay Petitioner's release date or the date of his

19  parole eligibility.  In contrast, if Petitioner were serving a determinate sentence, his claim

20  would be cognizable and appropriate for federal habeas corpus review because the loss of

21  credits would have delayed his release date, and success on his claim would necessarily

22  shorten his time in custody.  Alternatively, if Petitioner had not yet reached his minimum

23  eligible parole date, such a claim might also be cognizable because loss of time credits

24  would delay the first date he would be eligible for parole and possibly obtain a release date.

25  However, neither is the case here.

26      In any event, Petitioner's claim that the 2009 disciplinary finding could affect the

27  length or duration of his confinement is conclusory and speculative.  Even if this Court

28  were to vacate the disciplinary violation, Petitioner may nonetheless have been denied

postconviction credits under Title 15, section 2410(d), of the California Code of Regulations. As such, it is questionable whether Petitioner would succeed on his claim that the absence of a disciplinary violation would "necessarily shorten" his sentence. See Ramirez, 334 F.3d at 859.; cf. Sandin v. Conner, 515 U.S. 472, 487 (1995) (finding that the mere possibility of a denial of parole on the basis of disciplinary findings is too speculative where there are a host of other factors that inform a parole determination). Accordingly, the Court finds that habeas jurisdiction is lacking and therefore GRANTS Respondent's motion to dismiss without prejudice to Petitioner's bringing his due process claim in a civil rights action, as explained below.

**B.     FAILURE TO IMPLICATE A FEDERALLY-PROTECTED LIBERTY INTEREST**

Assuming arguendo that Petitioner had established the presence of federal habeas corpus jurisdiction, the Court turns to Respondent's alternative argument that the petition should be dismissed because it fails to implicate a federally protected liberty interest.

The Due Process Clause protects individuals against governmental deprivations of "life, liberty or property" without due process of law. Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972). In the prison context, the triggering interest is usually the one pertaining to liberty. See, e.g., Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (holding that revocation of parole is a deprivation of liberty that requires the provision of due process).

A liberty interest can arise from either the Due Process Clause itself or from state law. Meachum v. Fano, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe that they affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself. Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (finding liberty interest where prisoner was transferred to mental hospital); Washington v. Harper, 494 U.S. 210, 221-22 (1990) (finding liberty interest where prisoner was involuntarily administered psychotropic drugs)). States may create liberty interests for less-severe deprivations through statutes or regulations, but "[those] interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an

unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted).

Sandin established that less-severe deprivations authorized by state law will create a liberty interest only where the inmate can show that the liberty in question is one of "real substance." Id. at 477-87.  Generally, "real substance" is limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," id. at 487.

Petitioner claims that he was denied due process at his 2009 prison disciplinary hearing because he was not afforded all the procedural protections mandated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974).  In Wolff, the Supreme Court held that although prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply, where serious rules violations are alleged and the sanctions to be applied implicate state statutes or regulations which narrowly restrict the power of prison officials to impose the sanctions and the sanctions are severe, the Due Process Clause requires various minimum procedural protections.  See 418 U.S. at 556-57, 571-72 n.19.  But after Sandin, a prisoner's claim that he was denied due process in connection with a prison disciplinary proceeding must satisfy the "real substance" test in order to implicate a liberty interest and require any sort of procedural protection—the deprivation suffered as a result of the discipline imposed must be a deprivation of "real substance."  See, e.g., Resnick v. Hayes, 213 F.3d 443, 448-49 (9th Cir. 2000) (placement in secured housing unit pending disciplinary hearing did not give rise to protected liberty interest where plaintiff's conditions of confinement were not materially different from those imposed on inmates in administrative segregation or in the general population).

Respondent argues that Petitioner's due process claim fails to implicate a federally protected liberty interest because the deprivations he suffered as a result of the discipline

1    imposed—a 180-day loss of time credit—did not amount to a deprivation of "real

2    substance" under <u>Sandin</u>.  The Court agrees.

3         Ordinarily, the assessment of time credit following a prison disciplinary panel's

4    finding that a prisoner violated prison rules implicates a federally protected liberty interest

5    entitled to procedural protections because the assessment "will inevitably affect the

6    duration of [the prisoner's] sentence." <u>Sandin</u>, 515 U.S. at 487.  But such is not the case

7    here.  Because Petitioner is serving a life sentence, the loss of time credit affects only the

8    calculation of his minimum eligible parole date, <u>see</u> Cal. Code Regs. tit. 15, § 2400.  By the

9    time the 180 days of time credit at issue were assessed after he was found guilty of the 2009

10   disciplinary violation, his minimum eligible parole date had long passed in 2005.  In other

11   words, the loss of 180 days of time credit in 2009 had no impact on Petitioner's sentence.

12        In his opposition, Petitioner argues, in a conclusory fashion, that the challenged

13   2009 disciplinary finding amounted to a deprivation of "real substance" under <u>Sandin</u>

14   because he was "placed in administrative segregation."  Dkt. 9 at 5.  He claims that during

15   his placement in administrative segregation he suffered "severance of family ties, sleep

16   deprivation due to excessive noise directly related to overcrowding, a nervous breakdown,

17   unequal treatment of the laws concerning visitation, religious participation and the

18   like . . . ." <u>Id.</u>  However, Petitioner neither elaborates on the length of his placement in

19   administrative segregation, nor does he explain how the placement was related to the 2009

20   disciplinary finding.  Nowhere in the record does it show that Petitioner was assessed any

21   specific term of placement in administrative segregation as a result of the disciplinary

22   finding.[2]  Dkt. 6, Ex. 2.

23        In November 2009, when Petitioner was first suspected of being involved in

24   possession of a controlled substance for distribution, prison staff decided that he needed to

25

26

27   _____

28        [2] If Petitioner has a separate due process claim relating to his alleged placement in
     administrative segregation, he may raise such a claim in a separate civil action.

be "moved to administrative segregation . . . ."[3]  Id. at 3, 7.  However, any initial temporary placement is irrelevant because no resulting long-term placement in administrative segregation was assessed as a result of the disciplinary finding.  Instead, the record shows that upon being found guilty, Petitioner was assessed a 180-day credit forfeiture, loss of visitation, and mandatory random drug testing.  Id.  Petitioner takes issue with the assessment of loss of visitation; however, such an alleged hardship fails to implicate a federally protected liberty interest because a prisoner's interest in unfettered visitation is not guaranteed by the Due Process Clause itself.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); see id. at 464-65 (finding no protected liberty interest in Kentucky visitation regulations); see also Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994) (prisoners have no constitutional right to contact or conjugal visitation).

Accordingly, Respondent's motion to dismiss is GRANTED on the alternative ground that Petitioner's due process claim fails to implicate a federally protected liberty interest.

## III.   CONCLUSION

Petitioner's due process claim fails to invoke federal habeas corpus jurisdiction, or, in the alternative, fails to implicate a federally protected liberty interest entitled to procedural protections.[4]  His due process claim is DISMISSED because it is not appropriate for federal habeas corpus review.  This dismissal is without prejudice to bringing his due process claim in a section 1983 action.  Accordingly,

---

[3] In any event, the Ninth Circuit has held that the hardship associated with administrative segregation is not so severe as to violate the Due Process Clause itself.  See Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986) (applying Hewitt v. Helms, 459 U.S. 460 (1983)), cert. denied, 481 U.S. 1069 (1987).  Moreover, the Due Process Clause does not automatically confer on inmates a liberty interest in being placed in general population versus administrative segregation.  Hewitt, 459 U.S. at 466-68.  Therefore, Petitioner's allegation that he was placed in administrative segregation falls short of establishing a dramatic departure from the standard conditions of confinement and does not amount to an imposition of an "atypical and significant hardship."  See Sandin, 515 U.S. at 487.

[4] In light of the above discussion, the Court need not address the remaining arguments made by Respondent in support of his motion to dismiss.

IT IS HEREBY ORDERED THAT:

1.      Respondent's motion to dismiss is GRANTED and the petition is dismissed without prejudice to Petitiioner's bringing his due process claim in a section 1983 action.

2.      A certificate of appealability is DENIED.  Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

3.      The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

4.      The Clerk shall also send Petitioner a blank civil rights complaint form with his copy of this Order.

5.      This Order terminates Docket No. 6.

IT IS SO ORDERED.

Dated:  February 2, 2015

SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\HC.13\Pena3983.grantMTD(ftsc)-rev.docx

- 8 -